# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CHARLES W. BEAL, JR.,**
        **Plaintiff,**

    v.                                       Case No. 12-CV-01146

**OFFICER JAMES BELLER, and**
**OFFICER MATT STRELOW,**
        **Defendants.**

---

## DECISION AND ORDER

Pro se plaintiff Charles Beal, Jr. is suing defendants James Beller and Matt Strelow, officers with the Kenosha Police Department, under 42 U.S.C. § 1983 alleging that they seized and searched his person in violation of his Fourth Amendment rights. Defendants move for summary judgment.

The facts are as follows:[1] On September 11, 2007, at approximately 6:25 p.m., Beller was on duty and received a phone call from a confidential informant stating that an African American man wearing a yellow shirt and brown pants was selling heroin near the corner of 58th Street and 11th Avenue in Kenosha, Wisconsin.[2] Beller knew who the

---

[1] These facts are largely taken from defendants' proposed findings of fact because plaintiff did not respond to their factual findings and did not provide his own proposed findings of fact. I reviewed the factual allegations plaintiff made in his verified complaint, but he does not provide very many details about the incident. I also considered all of the other documents plaintiff has submitted to the court but only a few of them are relevant.

[2] In the affidavit he filed with this court, Beller claims the informant identified plaintiff by name. But he testified during the suppression hearing in state court that he only recalled the informant describing plaintiff's appearance and could not remember whether the informant had also provided Beal's name. Plaintiff submitted the transcript from the suppression hearing after the deadline for filing his brief in opposition to defendant's motion, but I still consider it because plaintiff tried to get the transcript before the deadline

informant was and that the informant had previously provided other officers in the police department with reliable information. The informant had also assisted with undercover drug buys. Beller also knew that drug trafficking frequently occurred in the area in which plaintiff was allegedly selling drugs. He had personally made an undercover drug buy at a house less than a block away from the corner in question. Beller told Strelow, his partner, about the tip and the two went to investigate.

Defendants drove to the 5800 block of 11th Avenue in a police car and exited the vehicle. There they observed plaintiff, who matched the description provided by the informant, standing in front of a house speaking with a woman and glancing around as he spoke. Plaintiff saw the officers. He made eye contact with Strelow and immediately put his hand in his right front pocket and turned as if to walk away. Defendants ordered him to remove his hand from his pocket and approach the police car. Plaintiff complied but continued to look around nervously. He provided his name when asked.

Defendants were concerned plaintiff might have a weapon in his pocket, so Strelow patted him down for weapons. He did not find any, but, during the pat-down, he felt a set of keys and a "soft-bulge" in plaintiff's right front pocket. (Aff. of Matthew Strelow ¶ 12, ECF No. 21-4.) Based on his training and experience, he believed the soft bulge was a number of individually wrapped packages of narcotics wrapped in tissue paper. He emptied the pocket and set the keys on the car. He then examined the package and saw that he was correct. It was a number of small plastic bags wrapped in tissue paper and the bags contained traces of powder. He then looked at plaintiff's keys and noticed that there was

---

but was unable to do so.

a flashlight attached to them that had no lightbulb. Because there was no lightbulb, he could see inside the flashlight and saw that the battery compartment had been stuffed with small plastic bags that contained a powder that Strelow and Beller believed to be heroin.

Plaintiff was arrested and charged with possession of heroin. The Kenosha County Circuit Court granted plaintiff's motion to suppress the heroin because it found that the scope of the pat-down search had exceeded what was lawful under the Fourth Amendment. As a result, the charges against plaintiff were dropped.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take the evidence in the light most favorable to the non-movant, here plaintiff, and may grant the motion only if no reasonable juror could find for plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). To prevail under § 1983, plaintiff must prove: 1) he was deprived of a right secured by the Constitution or laws of the United States, and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Defendants concede they were acting under color of state law during all of their interactions with plaintiff but argue that they are entitled to qualified immunity because they did not violate any of plaintiff's clearly established constitutional rights. Qualified immunity shields government officials from liability for civil damages under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). In order to determine whether defendants are entitled to qualified immunity, I ask "(1)

3

whether the facts, taken in the light most favorable to the plaintiff, amount to a constitutional violation; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation." *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012).

Plaintiff's first claim is that defendants violated his Fourth Amendment rights by seizing his person. If a police officer has a reasonable suspicion that an individual has committed or is about to commit a crime, the officer can briefly stop the individual to investigate without violating the Fourth Amendment even if there is no probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). Whether there is a reasonable suspicion of criminal activity is an objective inquiry that depends on "the totality of the circumstances known to the officer at the time the stop is made." *U.S. v. Uribe*, 709 F.3d 646, 649–50 (7th Cir. 2013). The officer must be able to point to "specific and articulable facts" that suggest criminality so that the officer is not acting on a mere hunch. *Id.* (quoting *Terry*, 392 U.S. at 21).

I conclude that defendants made a permissible *Terry* stop. They received a tip from an informant that a man was selling heroin on a particular street corner in an area known for drug trafficking. Within minutes of receiving the tip, they visited the corner and found that plaintiff, who matched the informant's description, was standing near the corner. He was speaking with another person while also keeping an eye on his surroundings, and, when he saw the police, he became nervous and quickly turned as if to walk away. These facts were sufficient to create a reasonable suspicion of criminal activity.

Plaintiff argues that the tip was unreliable because it was anonymous, but it was not anonymous. Beller knew who the informant was. Moreover, the tip had some indicia of reliability. Beller knew the informant had provided accurate information to police officers in

4

the past, and the informant had an incentive to tell the truth because he or she could be held responsible for providing misleading information. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) (noting that a tip from a known informant is reliable because the informant's reputation can be assessed and the informant "can be held responsible if her allegations turn out to be fabricated"); *see also Adams v. Williams*, 407 U.S. 143, 146–47 (1972) (finding that an officer properly relied on a tip where the informant "came forward personally to give information that was immediately verifiable at the scene").

Plaintiff's second claim is that he was unlawfully searched. As part of a *Terry* stop, an officer is entitled to frisk a person for weapons if the officer has a reasonable suspicion that the person might be armed and dangerous. *See Terry*, 392 U.S. at 27. A "reasonable suspicion" that someone is armed and dangerous exists if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* This standard is less demanding than probable cause and requires only "'a minimal level of objective justification'" for performing a pat-down. *U.S. v. Kenerson*, 585 F.3d 389, 392 (7th Cir. 2009) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

Defendants argue that they were justified in frisking plaintiff because they had just received a tip from a reliable informant that plaintiff was selling heroin, they were in a high-crime neighborhood known for drug trafficking and plaintiff became nervous when they approached. They claim he began looking around as if he planned to flee and immediately placed his hand in his right pocket. Plaintiff does not dispute these allegations. These facts were sufficient to create a reasonable suspicion that plaintiff might be armed and dangerous. *See Kenerson*, 585 F.3d at 392 ("[I]t is an unfortunate fact of life that trade in controlled substances is dangerous for all involved. Dealers may arm themselves for

5

protection against competitors, addicts and the police."). This is not, however, the end of the inquiry. There is still a question about whether defendants' search went too far.

A frisk for weapons is not a full-blown search of someone's person and "must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of a police officer." *Terry*, 392 U.S. at 29. Strelow arguably violated this limitation when he reached into plaintiff's pocket to remove the tissue paper package, an item that he had no reason to believe was a weapon. Defendants argue that Strelow's actions were justified under the "plain-feel doctrine." This doctrine allows a police officer to seize nonthreatening contraband detected during a protective pat-down search as long as the contraband's incriminating nature is immediately apparent to the frisking officer, i.e. the officer has probable cause to believe the object is contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 373–76 (1993). The justification for this rule is that a police officer should not be required to ignore obvious contraband if it is discovered while conducting a legal search. *Id.* at 374. The plain-feel doctrine does not apply if an officer must go beyond the permissible scope of the original search to establish probable cause. *Id.* at 379 (plain-feel doctrine did not apply where officer had to slide an object around with his fingers to ascertain that it was a lump of crack cocaine).

During the lawful protective pat-down, Strelow felt a "soft bulge" in defendant's pocket that he immediately recognized as contraband. Based on his training and experience, he believed the bulge was a bundle of individually wrapped narcotics packages wrapped in tissue paper, which is a common way to carry narcotics. There is no evidence that Strelow manipulated, squeezed or otherwise examined the bulge before determining that it was contraband. He claims it was apparent as soon as he patted down plaintiff's

6

pocket, and plaintiff does not argue that Strelow could not have reasonably suspected the object to be contraband based on the pat-down. Based on this uncontradicted evidence, I conclude that Strelow had probable cause to believe the item he felt in plaintiff's pocket was contraband and that the plain-feel doctrine allowed him to remove it.

Once Strelow opened the package and saw that it contained small bags with trace amounts of powder that appeared to be heroin, he had probable cause to search the rest of plaintiff's person. *See U.S. v. McDuffy*, 636 F.3d 361, 364 (7th Cir. 2011) ("[E]ven a tiny bit of discarded drugs increases the likelihood that police will find more in the home."). As part of this search, he could examine plaintiff's keys to see if the flashlight attached to them also contained heroin. Strelow also had a right to remove the keys from plaintiff's pocket and look at the attached flashlight as part of the *Terry* stop because it was a hard object that could have been some kind of weapon. *See U.S. v. Richardson*, 657 F.3d 521, 523–24 (7th Cir. 2011) (holding that an officer can remove an object from a person's pocket that might be a weapon even if it is not immediately apparent that it is a weapon). Strelow does not say that he suspected the keys to be a weapon, but his subjective beliefs are irrelevant because "[t]he test for reasonable suspicion is an objective one." *Id.*

For all of these reasons, I conclude that no reasonable jury could find that plaintiff's Fourth Amendment rights were violated, and I will grant defendants' motion for summary judgment. Since plaintiff's rights were not violated, I do not need to consider whether the rights at issue were clearly established. Defendants are entitled to qualified immunity either way.

Plaintiff filed a letter with the court stating that he needed more time to conduct discovery because he was having trouble obtaining copies of the transcripts from the

criminal proceedings in state court. I construe this letter as a request that I defer ruling on defendants' motion for summary judgment under Fed. R. Civ. P. 56(d). I will deny this request because plaintiff has since obtained copies of the transcripts. He filed these transcripts with the court, and I reviewed them along with all of the other documents he submitted. Since the record is complete, there is no reason for me to wait to rule on defendants' motion.

After defendants' motion was fully briefed, plaintiff filed his own motion for summary judgment. I will deny this motion as untimely. Alternatively, I will deny it on the merits. Plaintiff's brief does not discuss his claims against the defendants in this case. Instead, he discusses claims that he believes he has against a variety of other defendants not named in the complaint. This brief does not offer any grounds for entering summary judgment on plaintiffs' claims against defendants.

I will also deny plaintiff's motion to amend the complaint. Plaintiff states that he wants to add state law claims for defamation and willful infliction of emotional distress against defendants other than Beller and Strelow. But he failed to file a copy of his proposed amended complaint as required by the local rules. *See* Civil L.R. 15(b) (E.D. Wis.) ("The proposed amended pleading must be filed as an attachment to the motion to amend."). It would also be inappropriate for me to allow plaintiff to add new claims, which appear to be unrelated to the claims currently before the court, against new defendants this late in the case. *See* Fed. R. Civ. P. 15(a)(3) (noting that an amendment should be allowed "when justice so requires").

**THEREFORE, IT IS ORDERED** that plaintiff's motion for summary judgment (Docket #32) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend the complaint (Docket #33) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #19) is **GRANTED**. The clerk shall enter final judgment dismissing this case.

Dated at Milwaukee, Wisconsin, this 24th day of June, 2014.

                                          s/ Lynn Adelman
                                          LYNN ADELMAN
                                          District Judge